IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JOSEPH MAZYCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:23-cv-02602-DCN |
| vs. ) | |
| ) | **ORDER** |
| CITY OF NORTH CHARLESTON; ) | |
| JOHN DOE; JANE DOE; and MARY ROE, ) | |
| *for Unknown Actors*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on defendant City of North Charleston's (the "City") motion to dismiss, ECF No. 11. For the reasons set forth below, the court dismisses plaintiff Joseph Mazyck's ("Mazyck") due process and inverse condemnation claims, declines to exercise supplemental jurisdiction over his remaining state-law gross negligence claim, and remands this case to state court.

## I. BACKGROUND

This case presents a dispute over the City's demolition of two of Mazyck's properties (the "Properties"), which were in violation of the City's municipal code.[1] Both Properties are located in North Charleston. The first is at 2247 Mott Avenue, and the second is at 2230 Mott Avenue. Between February 2019 and December 2021, the City conducted public safety visits at the Properties.

---

[1] For the purpose of this order, the court accepts all well-pleaded allegations in Mazyck's complaint as true and dispenses with citations throughout the factual background. Unless otherwise specified, the factual background is taken from Mazyck's complaint, ECF No. 1-2.

1

On December 14, 2021, the City's Public Safety and Housing Committee (the "Committee") held hearings, with Mazyck in attendance, on the state of the Properties.[2] As a result, the Committee found that the Properties violated various city ordinances related to health and safety hazards, that the Properties constituted public nuisances, and that they were unfit for human habitation.[3] Consequently, the Committee ordered that Mazyck take action to abate the nuisance Properties (the "Committee Orders"). Specifically, the Committee gave Mazyck sixty days to cure the defects on the property at 2247 Mott Avenue by cleaning up the property, removing vehicles, and obtaining a structural engineer's report on bringing the structure up to code. Likewise, the Committee gave Mazyck thirty days to remove inoperable vehicles, cut overgrown grass, and demolish the structure on the property at 2230 Mott Avenue. Mazyck "communicated his intent to comply with the [Committee O]rders" on January 4, 2021.

---

[2] In his complaint, Mazyck alludes to the Committee's findings that resulted from these hearings, but he does not mention either the hearings themselves or his attendance thereof. See ECF No. 1-2, Compl. ¶ 9–10, 15–16. Nevertheless, the Committee subsequently filed orders in the Charleston County Court of Common Pleas reflecting both its findings and the fact that it held these hearings with Mazyck in attendance. See City of North Charleston v. Mazyck, No. 2021-CP-10-05202 (Charleston Cnty. Ct. C.P. Dec. 29, 2021) (order on the property at 2247 Mott Avenue); City of North Charleston v. Mazyck, No. 2021-CP-10-05203 (Charleston Cnty. Ct. C.P. Dec. 29, 2021) (order on the property at 2230 Mott Avenue); accord S.C. Code Ann. § 31-15-60 (requiring that a municipality file copies of orders declaring a dwelling unfit for habitation "with the clerk of the county in which the dwelling is located"). The court takes judicial notice of these filings as matters of public record. See Megaro v. McCollum, 66 F.4th 151, 157 (4th Cir. 2023) ("[A] court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment").

[3] In particular, the City found that the properties violated North Charleston, S.C., Code sections 9-67(2) (declaring properties containing uncultivated grass, weeds, or other vegetation public nuisances), 9-67(4) (declaring properties containing vehicles left in a state of disrepair public nuisances), 9-67(6) (declaring properties containing "[h]azards or conditions displayed on residential or commercial structures" public nuisances), and 10-26 (noting procedures for how a building is declared unfit for human habitation).

Two years later, on January 18, 2023, Mazyck requested additional time to carry out the various requirements of the Committee Orders. In spite of Mazyck's request, and without providing Mazyck any additional notice, the City demolished the property at 2247 Mott Avenue on March 17, 2023, and demolished the property at 2230 Mott Avenue on March 20, 2023.

Mayzck then brought this action in the Charleston County Court of Common Pleas on April 28, 2023, alleging violations of the due process clause of the Fourteenth Amendment, gross negligence, and inverse condemnation. Mazyck v. City of North Charleston, No. 2023-CP-10-02074 (Charleston Cnty. Ct. C.P. filed Apr. 28, 2023). The City removed the case to this court under federal question jurisdiction pursuant to 28 U.S.C. § 1441 (a) and (c). ECF No. 1. Thereafter, the City filed its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) in lieu of an answer on July 7, 2023. ECF No. 11. Mazyck responded in opposition to the City's motion on July 21, 2023, ECF No. 12, and the City replied on July 28, 2023, ECF No. 13. As such, the motion is fully briefed and is now ripe for review.

## II.  Standard

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Lab'ys, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Lab'ys, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Although the evaluation is generally limited to a review of the allegations of the complaint itself, and documents attached to the complaint as exhibits, a court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." Megaro v. McCollum, 66 F.4th 151, 157 (4th Cir. 2023).

### III.  Discussion

To begin, the court notes that Mazyck has conceded his inverse condemnation claim, ECF No. 12 at 9, and both parties now request dismissal of that claim, id.; ECF No. 11 at 12–18. The court grants this request and proceeds with consideration of Mayck's two remaining claims: a violation of the Due Process Clause of the Fourteenth

Amendment[4] and gross negligence.  See ECF No. 1-2, Compl. ¶¶ 24–37.  Ultimately, the court dismisses Mazyck's due process claim and declines to exercise supplemental jurisdiction over his remaining gross negligence claim.

### A. Due Process Claim

The Due Process Clause of the Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Before one can allege that his right to life, liberty, or property has been unconstitutionally invaded, one must, of course, have such a right in the first place.  See Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 826, 827 (4th Cir. 1995) (listing the existence of "property or a property interest" as an element of both a procedural and substantive due process claim).  As such, the court begins with the question of whether Mazyck had property rights before delving into the question of whether the City's alleged invasion of those rights violated due process.

#### 1. Property Interest

The City argues that Mazyck can have no property interest in maintaining a nuisance.  ECF No. 11 at 7.  In support of this argument, it points specifically to the Fourth Circuit's decision in Trobough v. City of Martinsburg, 120 F.3d 262, 1997 WL 425688 (4th Cir. 1997) (unpublished table decision).  The plaintiffs in Trobough owned

---

[4] Mazyck brings this claim directly under the Fourteenth Amendment.  Compl. ¶ 26.  The Fourteenth Amendment does not provide a stand-alone cause of action apart from the remedies provided in 42 U.S.C. § 1983.  See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735–36 (1989).  Nevertheless, Mazyck's due process claim should proceed as if it were asserted under § 1983, see Cale v. City of Covington, 586 F.2d 311, 318 (4th Cir. 1978), and the City may be sued under § 1983 for the alleged unconstitutional implementation of a local ordinance or regulation, see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

an apartment building in Martinsburg, West Virginia. Id. at *1. Citizens complained to the city of Martinsburg for several years about the state of the plaintiffs' apartment building. Id. Garbage was accumulating on the property, a burst pipe was discharging raw sewage, the porch had become rotten, electrical and heating services were inadequate, and there were no smoke detectors. Id.

Upon investigating these citizen complaints, the city found additional code violations and posted an Emergency Condition Order on the property, which required that the apartments be vacated and closed until they could be brought up to code. Id. at *2. The plaintiffs then "ignored the order to vacate, failed to avail themselves of the administrative appeals process, and removed the posted order from the premises." Id. Thereafter, they attempted to secure a building permit to perform some of the necessary maintenance. Id. However, the city denied the permit request and arrested the plaintiffs for removing the city's order. Id. The plaintiffs then sued the city for violating their procedural and substantive due process rights, the takings clause, and the equal protection clause. Id. The Fourth Circuit affirmed the district court's grant of summary judgment to the city of Martinsburg on the substantive due process claim because "no person enjoys a property interest in maintaining a nuisance" and "the [c]ity's actions . . . involved ameliorating a serious risk to persons and property." Id. at *3. Likewise, the Fourth Circuit affirmed the district court's grant of summary judgment on the procedural due process claim "[b]ecause the [c]ity acted to protect its citizens from a nuisance" and "[i]n situations where a government must act to protect its citizens from a nuisance, the availability of a prompt hearing, subsequent to the action satisfies the demands of due process." Id.

In response, Mazyck argues that his case is distinguishable from Trobough because the City gave him time to fix the violations on his property before the City demolished his buildings, and he had been working with the City in good faith to make the necessary repairs for a year before his property was demolished. ECF No. 12 at 6. To support these assertions, Mazyck attaches to his response two letters his counsel sent the City on January 4, 2023, and January 18, 2023. ECF Nos. 12-2; 12-3.[5] The January 18 letter, in particular, explained that Mazyck's delay in complying with the Committee Orders was due to his wife battling cancer and that he was unsure on the deadline for curing the property defects. ECF No. 12-3 at 1. It also explained that Mazyck had cleaned up the property at 2247 Mott Avenue, removed the cars, and was willing to complete any repairs recommended by a structural engineer within the next three months. Id. It further requested that the property at 2230 Mott Avenue not be demolished. Id.

---

[5] It is unclear whether the court can consider either the January 4 or January 18 letters without converting the City's motion to dismiss into a motion for summary judgment. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). In analyzing a motion to dismiss, the court may consider documents not attached to a plaintiff's complaint when those documents are "integral to and explicitly relied on in the complaint and . . . the plaintiffs do not challenge [the documents'] authenticity." Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999). Paragraph 19 of Mazyck's complaint references his attempt to communicate with the City on January 4, 2021. Compl. ¶ 19. It is possible, though not certain, that this allegation was intended to refer to the letter his counsel sent the City on January 4, 2023. See ECF No. 12-2. While neither party disputes the letters' genuineness, see ECF Nos. 12 at 5, 7; 13 at 2, it is dubious whether the letters were "explicitly relied on in the complaint," Phillips, 190 F.3d at 618; accord Charleston Advancement Acad. High Sch. v. Acceleration Acads., LLC, 2020 WL 4016256, at *10 (D.S.C. July 16, 2020) (declining to consider documents not specifically relied upon in the complaint). In any event, the court reaches the same conclusion whether considering the letters or not.

Mazyck is correct that there was a significant time gap between the City issuing its Committee Orders in December 2021 and the City demolishing the Properties in March 2023. Compl. ¶¶ 21–22; ECF Nos. 11-1 at 7–8; 11-2 at 7–8. However, he has presented no argument on why this fact should result in the court reaching a different result from the Fourth Circuit in Trobough. He does not allege that the Properties were not still in violation of the City's ordinances when the City issued its Committee Orders or when it demolished the Properties.[6] He further concedes that the City has an interest in demolishing properties unfit for habitation. ECF No. 12 at 5. In other words, there is no dispute either that the Properties still constituted a nuisance or that the City has the authority to demolish Properties to abate nuisances.

Thus, the premise upon which the Fourth Circuit based its reasoning in Trobough—that one cannot base a due process claim on a city's abatement of a nuisance because maintaining a nuisance is not a cognizable property interest—is just as true in this case as it was in Trobough. See Trobough, 1997 WL 425688 at *3. Moreover, much like Mazyck, the plaintiffs in Trobough also unsuccessfully attempted to cure their

---

[6] Even if Mazyck had not conceded this point, Mazyck's remedy for challenging the determination that the properties constituted nuisances would likely be found in state-court, rather than this court. See S.C. Code Ann. § 31-15-70 (providing that petitioning the circuit court for an injunction restraining a municipality from carrying out an order declaring a dwelling unfit for human habitation is the "exclusive remedy" for challenging such an order); Brewington v. Davis, 2019 WL 132588, at *8 n.20 (D.S.C. Jan. 8, 2019) ("[T]he Rooker-Feldman doctrine bars any federal review of the state circuit court's order effectively treating [a property] as a public nuisance. (citing Shooting Point, L.L.C., 368 F.3d 379, 385 (4th Cir. 2004))).
What's more, while the court bases its decision solely on the allegations in Mazyck's complaint and does not rely on his letters, the letters, if considered, further show that Mazyck had yet to comply with the Committee Orders, as he had neither retained a structural engineer for review of the property at 2247 Mott Avenue nor had he demolished the property at 2230 Mott Avenue. See ECF Nos. 12-2 at 1; 12-3 at 1.

property defects, but those efforts did not enable them to assert a due process violation. Id. Consequently, Mazyck has not plausibly alleged that the City invaded a cognizable property interest, and his allegations, therefore, do not support a due process claim. See id., at *3; see also Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 491–92 & nn.20–22 (1987) (explaining that a state's effort to "enjoin [a] nuisance-like activity" does not give rise to a taking claim because "no individual has a right to use his property so as to create a nuisance or otherwise harm others"); Sansotta v. Town of Nags Head, 724 F.3d 533, 541 (4th Cir. 2013) ("By acting to abate what it believed was a nuisance, the Town simply kept the Owners from using their property in a way that was prohibited by law. . . .  The Town's actions to abate a nuisance were reasonable - if mistaken - uses of its police power that did nothing to deprive the Owners of any property right."); Brewington, 2019 WL 132588, at *8–9 (ruling that abating a continued public nuisance does not violate the due process clause and, thus, does not give rise to a § 1983 claim).[7]  In sum, Mazyck's due process claim must be dismissed because of his failure to plausibly state that he has a property interest sufficient to bring this claim.

---

[7] Generally, while the court looks to federal law to determine whether the due process clause has been violated, the question of whether a property interest existed in the first place is a matter of state law. See Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 146 (4th Cir. 2018).  However, in most of the cases cited above, the Fourth Circuit and Supreme Court did not consult state law when they declared that a property interest cannot exist in the continued maintenance of a nuisance. See e.g., Keystone, 480 U.S. at 491–92 & nn. 20–22; Trobough, 1997 WL 425688 at *3.  The Fourth Circuit broke from that pattern in Sansotta when it noted that this rule established by federal courts was also supported by North Carolina law because North Carolina permitted local governments the authority to abate nuisances on private property. Sansotta, 724 F.3d at 541 & n.10.  As such, under North Carolina law a landowner's unabated nuisance constituted a use of property prohibited by law. Id.  Because South Carolina entrusts municipalities with this same authority, see S.C. Code Ann. § 31-15-20 (providing that a municipality may "repair, close, or demolish" any dwellings it finds "unfit for human habitation"), the perpetuation of a nuisance on private property is, likewise, an illegal use

### 2. Due Process of Law

Even if Mazyck had properly alleged the existence of a cognizable property interest, he would still have failed to plausibly allege that the City's invasion of that interest violated his right to due process of law. A due process claim may be brought under either a procedural or substantive due process theory. Sylvia Dev. Corp., 48 F.3d at 826–27. Mazyck does not specify in his complaint whether he asserts a violation of his substantive or procedural due process rights. See Compl. ¶¶ 24–31. However, the City moves to dismiss based on either theory, ECF No. 11 at 5, and, in response, Mazyck argues that his allegations are sufficient to support both a substantive and procedural due process claim, ECF No. 12 at 4. Thus, in the interest of completeness, the court analyzes both, but ultimately concludes that, had Mazyck plausibly alleged the existence of a cognizable property interest, dismissal would still be appropriate because Mazyck's allegations do not support a finding that the City violated his due process rights.

### a. Procedural Due Process

To successfully plead a procedural due process claim, Mazyck must plead facts to show "(1) [he] had property or a property interest (2) of which [the City] deprived [him] (3) without due process of law." Sylvia Dev. Corp., 48 F.3d at 826. Procedural due process requires both fair notice of an impending state action and an opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Proper notice is "an elementary and fundamental requirement of due process," and must be reasonably calculated to convey information concerning a deprivation. Mullane v. Cent. Hanover Bank & Tr. Co.,

---

of private property under South Carolina law. Consequently, Mazyck has failed to allege a cognizable property interest under both Fourth Circuit precedent and South Carolina law. See Sansotta, 724 F.3d at 541; S.C. Code Ann. § 31-15-20.

339 U.S. 306, 314 (1950). Mathews presents a three-step test for determining the adequacy of the opportunity to be heard: (1) a balancing of the private interest and the public interest; (2) the risk of an erroneous deprivation of such interest through the procedures used, and (3) the value, of additional or substitute procedural safeguards. 424 U.S. at 335. The alleged violation of a state law does not, by itself, result in a procedural due process violation unless the "alleged noncompliance with the state law . . . [is] so extreme as to result in denial of a constitutionally fair proceeding." Snider Int'l. Corp. v. Town of Forest Heights, 739 F.3d 140, 145 (4th Cir. 2014) (internal quotation marks omitted).

Mazyck's procedural due process claim is based on the City's alleged failure to provide him with notice that comported with state and local law. In Mazyck's complaint, he alleges that the City violated the International Property Maintenance Code ("IPMC"). Compl. ¶ 25. However, in his response to the City's motion, he does not mention the IPMC and instead argues, for the first time, that the City violated its own ordinance on proper notice. ECF No. 12 at 4. Specifically, North Charleston, S.C. Code section 10-33 requires that the City serve an order finding that a property is unfit for habitation either personally or by registered mail. However, the ordinance goes on to provide that such an order may be served by publication if "the whereabouts of [the property owner] is unknown and the same cannot be ascertained." Id. Mazyck claims that the City served him with notice of its Committee Orders by publication despite the fact that his location was ascertainable and that this constitutes a violation of section 10-33. ECF No. 12 at 4–5. He also argues, without pointing to additional authority, that he should have received additional notice prior to the City's demolition of his Properties in March 2023. Id. at 5.

11

In contrast, the City argues that it did provide him with proper notice, that Mazyck was given a forum to rebut the charges, that Mazyck was given far more time to cure the property defects than originally permitted in its Committee Orders, and that Mazyck was not working diligently toward curing those defects. ECF Nos. 11 at 8; 13 at 1–2.

Even if Mazyck is correct that the City violated state law or its own ordinances when it served him with notice of its Committee Orders, such a violation would still be insufficient to support his procedural due process claim. In his complaint, Mazyck does not allege how the City's failure to properly serve him resulted "in denial of a constitutionally fair proceeding." Snider Int'l Corp., 739 F.3d at 145. Rather, he simply alleges that the City did not follow the IPMC and that this resulted in a due process violation, which amounts to nothing more than a conclusory allegation. Compl. ¶¶ 25–28. Without more, the City's alleged violation of either the IPMC or section 10-33 is insufficient to support Mazyck's procedural due process claim. See Snider Int'l Corp., 739 F.3d at 145. Thus, had the court not dismissed the due process claim for failure to plausibly state a property interest, it would nevertheless dismiss the claim for failure to plausibly state a violation of procedural due process.

### b. Substantive Due Process

To successful assert a claim under a substantive due process theory, Mazyck must plead facts showing "(1) that [he] had a property or a property interest; (2) that the [City] deprived [him] of this property or property interest; and (3) that the [City's] action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." Sylvia Dev. Corp., 48 F.3d at 827. "This is a high bar, and [the City's] action is illegitimate 'only if the alleged purpose behind the [City's] action has no

12

conceivable rational relationship to the exercise of the state's traditional police power through zoning.'" Quinn v. Bd. of Cnty. Comm'rs, 862 F.3d 433, 443 (4th Cir. 2017) (quoting Sylvia Dev. Corp., 48 F.3d at 827).

The City argues that Mazyck's substantive due process claim should be dismissed because it has a substantial interest in protecting the health, safety, and morals of its residents, which includes demolishing buildings unfit for human habitation. ECF No. 11 at 7. It therefore contends that its actions were justifiable. Id. While Mazyck concedes that the City has an interest in demolishing buildings unfit for human habitation, he argues that the City's actions were, nonetheless, unjustifiable for the same reasons underlying his procedural due process claim. ECF No. 12 at 5. Namely, he claims that the City improperly served the Committee Orders via publication, that he was working with the City to cure the defects on his property for over a year at the time of the demolition, and that he should have been given additional service of notice before the City demolished his property in March 2023. Id. Thus, Mazyck's arguments come down to whether the City followed the proper procedure before demolishing his property. See id.

To reiterate, Mazyck conceded that his Properties constituted a nuisance, ECF Nos. 12 at 5; 12-2 at 1; 12-3 at 1, and that the City had an interest in demolishing Properties unfit for habitation, ECF No. 12 at 5. While he may have alleged that the City's actions violated various procedural requirements in South Carolina law or the City's own ordinances, he has not alleged how the purpose behind the City's actions were disconnected from its traditional police powers. See id.; Compl. ¶ 25. Consequently, he has not met the "high bar" of successfully pleading a substantive due process claim, and

had the court not already dismissed his claim for failure to plausibly state a cognizable property interest, it would dismiss his substantive due process claim accordingly. See Quinn, 862 F.3d at 443.

### B. Gross Negligence Claim

Because the court dismisses Mazyck's due process and inverse condemnation claims, it declines to exercise supplemental jurisdiction over Mazyck's gross negligence claim. See 28 U.S.C. § 1367(c)(3).

A federal district court "has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349 (1988) (quoting Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). When evaluating whether to exercise jurisdiction over pendent state-law claims, a district court should consider the values of "judicial economy, convenience, fairness, and comity." Id. at 350. "Because in some circumstances a remand of a removed case involving pendent claims will better accommodate these values than will dismissal of the case, the animating principle behind the pendent jurisdiction doctrine supports giving a district court discretion to remand when the exercise of pendent jurisdiction is inappropriate." Id. at 351; see also Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). A district court may decline to exercise supplemental jurisdiction over pendent state claims if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

>      (3) <u>the district court has dismissed all claims over which it has original jurisdiction</u>, or
>      (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367 (emphasis added).

In deciding whether to remand, the federal court should construe removal jurisdiction strictly in favor of state court jurisdiction. <u>Dixon v. Coburg Dairy, Inc.</u>, 369 F.3d 811, 816 (4th Cir. 2004). "If federal jurisdiction is doubtful, a remand is necessary." <u>Mulcahy v. Columbia Organic Chems. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994) (citations omitted); <u>accord</u> <u>Pohto v. Allstate Ins. Co.</u>, 2011 WL 2670000, at *1 (D.S.C. July 7, 2011) ("Because federal courts are forums of limited jurisdiction, any doubt as to whether a case belongs in federal or state court should be resolved in favor of state court.").

Thus, the court remands this case back to state court. <u>See</u> <u>Carnegie-Mellon Univ.</u>, 484 U.S. at 350. In so doing, the court notes that the Fourth Circuit has repeatedly stated a preference that municipal zoning and land-use disputes remain in state court and has even admonished parties for bringing such disputes into federal court:

> [L]and-use decisions are a core function of local government. Few other municipal functions have such an important and direct impact on the daily lives of those who live or work in a community. The formulation and application of land-use policies, therefore, frequently involve heated political battles, which typically pit local residents opposed to development against developers and local merchants supporting it. Further, community input is inescapably an integral element of this system. Subdivision control is an inherently discretionary system that allows—indeed, sanctions— compromise and negotiation between developers and the planners who represent the community.
>
> Resolving the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials is simply not the business of the federal courts . . . . Accordingly, federal courts should be extremely reluctant to upset the delicate political balance at play in local land-use disputes.

Sylvia Dev. Corp., 48 F.3d at 828–29 (quoting Gardner v. City of Balt. Mayor & City Council, 969 F.2d 63, 67 (4th Cir. 1992)); accord Petersburg Cellular P'ship v. Bd. of Supervisors, 205 F.3d 688, 703 (4th Cir. 2000); Trobough, 1997 WL 425688, at *4 ("The Troboughs had every opportunity to seek resolution of their claims in state court and chose not to do so. The federal courts are overburdened with litigation and do not need, and should not be burdened with, this kind of action which seeks resolution of state claims."); cf. Town of Nags Head v. Toloczko, 728 F.3d 391, 396 (4th Cir. 2013) (noting that Fourth Circuit "precedent demonstrates that [land use cases] characteristically meet the Burford abstention criteria" but that a district court should not abstain when a party asserts a due process violation under 42 U.S.C. § 1983).

It could be the case that the City violated either South Carolina law or its own ordinances when it demolished Mazyck's Properties, and perhaps Mazyck has a remedy for such a transgression. If so, however, such a remedy will not be found in this court. Rather, this dispute presents a local matter, which the principal of comity obliges be resolved in state court. See Carnegie-Mellon Univ., 484 U.S. at 349–50. Hence, that is where this case will go.

### IV.   Conclusion

For the reasons set forth above, the court grants the City's motion, ECF No. 11, and dismisses Mazyck's inverse condemnation and due process claims, declines to exercise supplemental jurisdiction over Mazyck's gross negligence claim, and remands the case back to state court.

AND IT IS SO ORDERED.

                                              **DAVID C. NORTON**
                                              **UNITED STATES DISTRICT JUDGE**

**October 13, 2023**
**Charleston, South Carolina**

17